All right, our sixth case for this morning is George Meuser v. Colvin, Acting Commissioner. Mr. Yochum. Good morning, Your Honors. My name is Eric Yochum, and I'm here on behalf of Appellant George B. Meuser. May it please the Court. I think this case basically reflects a lack of knowledge, as I said in my brief repeatedly, of the negative symptoms of schizophrenia. I think along the way, the ALJ also fails to follow Social Security rulings and regulations regarding determining severe impairment. In particular, he failed to mention Social Security Ruling 96-3P. And it's kind of like some older cases where the judge fails to mention the listing. It's kind of a similar incidence. It's difficult to determine if he actually considered the appropriate criteria in determining if Mr. Meuser either had or didn't have a severe impairment. But by failing to mention the listing, that gives him a lot of guidance doing that. And I think also the diagnostic criteria for schizophrenia are very relevant in this regard. Something that the Social Security Administration has never really wanted to recognize is that in order for a diagnosis of a psychiatric condition to be given, DSM-IV and DSM-V both require some type of functional limitations. You don't show up to your psychiatrist's office saying, oh, I'm making lots of money, I got a good job, I get along with my wife and kids, everything's fine, I love my neighbors. But every once in a while I feel depressed, and then you get a diagnosis of major depression. That's under the criteria of the DSM-IV and DSM-V, that just wouldn't happen. And with schizophrenia, you have to have a markedly diminished level of functioning in either social functioning, work functioning, or self-care. Which is the flat affect. Now this is a Step 1 case, right? Step 2. Oh, Step 2, okay, sorry. Right, he's been out of the workforce, that's Step 1, so Step 2. So is the essence of your argument that the ALJ imposed too high a bar on the severity of the impairment, or just thought there was no impairment at all? Well, he does recognize that the schizophrenia is a medically determinable impairment. And under the ruling and the regulations, once you make that step, you are supposed to consider the individual's symptoms and their testimony at the hearing about those symptoms. Now, in his summary, he mentions several things that would indicate that Mr. Muser's schizophrenia was severe. He says he had trouble concentrating, he didn't have the energy to go to work, basically he needed help from his parents, and basically those types of things, if considered in determining whether or not his impairment was severe, basically point in the direction of him being severe. And also, as 96.3p says, if the judge, after assessing the impairment and considering the testimony, can't decide one way or the other, they're supposed to go ahead and proceed with the sequential evaluation. Well, in this situation, I think, in large part due to a misunderstanding of the negative symptoms of schizophrenia, he didn't do that, the ALJ didn't proceed with the evaluation. I think also, it's pretty apparent, and as this court has repeatedly said, the ALJ used boilerplate. That I find less troubling here than I sometimes do. At least he avoided that. But he, the ALJ does seem to misunderstand, I think, these negative symptoms. I mean, a lot of people, he says he's got mild limitation in concentration, persistence, or pace, looking at the functional areas. No decompensation, he's looking at other things. Mild limitations, social, daily living. He does acknowledge the insomnia, that's a very constant complaint with all of this. But he fails to recognize or consider that insomnia is often a very significant problem with schizophrenia. And also, that would point to the schizophrenia being severe. Now, I can understand a little bit about the boilerplate, but I think, unfortunately, what that really reflects is a failure to apply the appropriate standard of evidence in this case. I mean, the boilerplate, what's problematic, it says, I don't find your testimony entirely credible. Which is an indication that in order to be found disabled, I must find that your testimony is entirely credible. Well, as the Social Security ruling 405.1c3 says, it's a preponderance. And also, which was in the ruling that was applicable at this time, 96.7p basically says, you don't have to accept all of what a claimant says or reject what all an individual says. You can pick and choose, and you can make different determinations. And basically, again, going back to the judge's summary of the testimony, there are several things in there where he's having troubles with concentration. And also, his testimony that he didn't leave the house. You know, to go to work, he got to leave the house. So, maybe your strongest evidence is this August 15, 2013 report to Dr. Roten that he's doing okay. I guess Dr. Roten says he's doing okay with negative symptoms remaining prominent. No positive symptoms with this Zyprexa. Well, I think that kind of segues into the ALJ's failure to weigh the treating source opinion properly. Because with schizophrenia, as the sources I cite in my brief say, basically you have to observe the schizophrenic person. They oftentimes will express that they want to do things and they have certain desires, but when you observe their flat effect and their lack of expression, it supports the diagnosis and also is an indication of the severity. And also, as I said in the brief, basically with schizophrenia, most people are looking for the psychotic episodes. But as the sources in the brief say, basically those can typically be dealt with with antipsychotic medications. The truly significant limiting part of schizophrenia is the negative symptoms. They're the things that prevent schizophrenics from being able to have relationships with people. It prevents them from being able to leave their house and work. And that's another thing, basically, I think is a problem with the decision. The ALJ rejects treating psychiatrist Dr. Roten's opinion. It never acknowledges or discusses the factors for weighing an opinion. It doesn't note that Dr. Roten was a treating psychiatrist. It doesn't discuss the treating relationship. It doesn't discuss the frequency of contact. Dr. Roten, in an 18-month period, saw him nine times or roughly approximately once every two months. And then Dr. Roten does complete this mental residual functional capacity assessment, but the ALJ rejects that whole thing, right? Yes, and I think that's a combination of a lack of understanding of the negative symptoms of schizophrenia and also basically overlooking the Dr. Roten's notations of blunted effect, difficulty sleeping, problems with memory and concentration, et cetera. It would be nicer if Dr. Roten's records were a little bit more detailed, but unfortunately in the world of treating physicians, oftentimes that's not the case. They don't like writing long notes. Well, and also I think that's also a problem with him not acknowledging that Dr. Roten was a treating psychiatrist, a specialist who, under the regulations, his opinion is supposed to be worth more weight. Well, that's what I was going to ask. We've got a psychiatrist on one side, the treating psychiatrist. We have a psychologist on the other side. Well, certainly, and I think that the psychiatrist wins, basically. He's the specialist. And also I think unfortunately- And the other person didn't examine him, right, just read the file? Exactly. That's what was going to be my next point is the state agency psychologist never saw Mr. Muser. Therefore, they couldn't appreciate or even observe his effect and his mood, et cetera, and they didn't see that he might have been expressing things even on the phone. There's one note where they said, well, he can do all these things, but basically that's typical with the negative symptoms of schizophrenia. Those types of people will express that they want to do things, but they don't. And as his testimony and I think Dr. Roten's notes show and his opinion and his RSC show, he doesn't have the ability to go out and do these things as a normal person would. And I think also the ALJ kind of overlooked basically the kind of sheltered environment that Mr. Muser lived in. He lived with his parents. He had worked in the same place for 16 years. And it's pretty clear that due to a switch in his normal medications to the generic and also an increase in stress at work that his condition got worse and he ended up going to the hospital and started seeing Dr. Roten. Okay. We're going to need to wrap up now if you'd like to conclude. Thank you. Thank you. Ms. Freeburg. May it please the Court, Counsel Cynthia A. Freeburg, on behalf of Acting Commissioner of Social Security Carolyn Colvin. This is a case about a man who had schizophrenia for 14, 15 years. And he was able to work with it. He was receiving proper medication and treatment, and he worked for 14 or 15 years. But he's not claiming an onset date within that time. He's claiming an onset date later after the medications are disrupted. There's evidence from his treating physician in the record that he's no longer, actually he's faced with the choice of returning to work or being fired. So he quits his job because he's not able to cope, he says. And he sees Dr. Roten. I'm worried about the agency's treating physician rule. It really seems that the agency is not applying that rule. As we pointed out in our brief, although the ALJ did not explicitly recite the factors for consideration of a treating physician opinion, the ALJ thoroughly discussed Dr. Roten's opinion. He discussed all the treatment notes. Although he didn't use the word treating psychiatrist, he noted he was clearly aware that Mr. Muser was going to him for mental health treatment, that he was receiving treatment. But he's misreading the treating records. If you look at page 9 of 12 of the ALJ's opinion, he's referring to Dr. Roten's mental residual functional capacity assessment, the limitations in sustained concentration, persistence, social interacting. And the ALJ thinks these findings are completely in contrast with the treating records of Dr. Roten. And failing to recognize that negative demonstration, negative factors are signs of schizophrenia, a flat affect, inability to sleep, inability to do things, living forever with his parents in a very protected environment. If the ALJ had followed a transparent consideration of the treating physician and had understood what kinds of evidence was there in the records, I think this might have been different. And then when you get non-treating... One person's a psychologist. We don't even know who the other person was. He could have been a lawyer, for all I know. We have one psychologist who never sees this man. It seems to me strange that the government didn't at least have somebody examine him and come up with an independent determination. Well, again, we submit that the ALJ properly did consider Dr. Roten's opinion under the... But what if he misunderstood every word Dr. Roten wrote? That's not a good consideration. He can talk about it for a while, but what if he's talking about negative symptoms remaining prominent, that's at the top of page 10. The assessment is insomnia and schizophrenia. His GAF scores, which I realize have been abandoned by the DSM, but they were used at the time, are not something to be thrilled about. It just doesn't give Dr. Roten's opinion any weight. And I just wonder if the ALJ had said, Oh, but he's the treating physician, he's got this long period, and this is his overall assessment, why that gets trumped by somebody who's never looked at him. Well, because the ALJ found that these treatment notes did not support Dr. Roten's extreme opinion of marked and extreme... No, I know he said that, but why does he say that? Does he understand what negative symptoms are? I don't know what the ALJ understood. However, the negative symptoms remaining prominent is noted on a single occasion in August of 2013. The negative symptoms remaining prominent notation was not made prior to that in the previous eight visits. Why do you think he keeps diagnosing Mr. Muser with schizophrenia then? Well, because Mr. Muser had schizophrenia, and the ALJ accepted the diagnosis. This is not like the Thomas case that Mr. Yochum submitted yesterday as additional authority. In the Thomas case, the ALJ rejected a diagnosis of fibromyalgia. This is not that case. The ALJ accepted that Mr. Muser was diagnosed with schizophrenia, had schizophrenia. But the problem then is that the ALJ seems to be at the Step 2 stage. The ALJ is looking to me as though he's doing a Step 4 analysis, and that's wrong, of course. At the Step 2 phase, the bar is not so high. An impairment is not severe, only if it's a slight abnormality, has no more than a minimal effect. That's 96.3 P. We've said Step 2 is not a high bar. Other circuits have said it's just a de minimis screening. Again, I'm concerned that this ALJ just jumps too far too fast, really. Well, the ALJ found that he did not have a severe impairment because his schizophrenia did not significantly limit him for 12 months. There's no durational requirement at Step 2. I mean, later on, he's got an impairment at Step 2. It requires some kind of severe impairment, but it doesn't need – we don't know yet what the Step 4 – actually, we don't even know about a listing, but we don't know yet about what either Step 4 or Step 5 would be. So do you think this court is wrong to call Step 2 as a de minimis screening for groundless claims? Thomas against Colvin? No, I don't think the court is wrong in characterizing the Step 2 standard as de minimis. So why doesn't his schizophrenia at least get him into the rest of the analysis, which, of course, would have to happen? I don't think that's an issue. Because the ALJ reasonably found that he was not – he did not have a severe impairment for more than 12 months. His medication was changed to a generic form, and Muser testified that that's what caused his sleep problems, which led to social problems and concentration problems. But the change back doesn't help, right? Well, the ALJ found that it did because Mr. Muser is going to Dr. Roten, reporting that he's doing better, his sleep improved, and he did have some sleep problems. Dr. Roten was adjusting his medication, adding Trazodone, and trying to adjust the medication. So Mr. Muser felt better. And this period of time just does not meet the durational requirement that he – Muser hasn't shown that he had – he was significantly limited in his abilities to perform basic work activities for one year. And to the extent that there's blunted affect notations, there was a blunted – there was a notation that he had – that he was somewhat socially impaired by his blunted affect, but his coworkers liked him back in June of 2011 while he was still working. All right, so I'm going to go back to your insistence that the durational requirement is part of the definition of severe. If you look at 404.1520, I don't think you find that in 20CFR. And the ALJ didn't say that was the reason. He was finding that there was a lack of severity here, so we have a Chenery problem as well. Well, the ALJ does specifically state that he did not have – Where does he say that? In finding number 4, page 3 of 12 of the ALJ's decision, transcript page 20, the ALJ does say, claim it does not have an impairment combination of impairment that significantly limited the ability to perform basic work activities for 12 consecutive months. Where are you? I'm sorry. Page 3 of 12? Page 3 of 12 in the ALJ's decision, which is transcript. That's step 4. Therefore, when he cites something – That's finding number 4. Yeah. Okay, so there's no explanation of that. It's just sort of there. Because the rest of his discussion doesn't focus on the 12 months. I see what you're saying. That's forward-looking, I think. He hasn't engaged in substantial gainful activity since December 19, 2011. He's got the schizophrenia, but he doesn't think that it's serious schizophrenia. So that's where he tosses it out. And I see I'm out of time, but the regulation on the duration, we cite in our brief at page 18, 20 CFR 404.1520, sub-A, sub-4, sub-small Roman numeral 2. If an individual does not have a severe medically determinable physical or mental impairment that meets the duration requirement in 404.1509, the agency will find him not disabled. Okay. So since I'm out of time, if there are no further questions, I will rest on my brief and ask this Court to affirm the Commissioner's decision. All right, thank you very much. You ran out of time, Mr. Yochum, but I'll give you one last minute if you'll stick within it. Dr. Roten, in his mental RFC, said that his patient, Mr. Muser, had been suffering at the level described therein since February 12, 2012. And also, from February of 2012, as Your Honor, I think, noted, are the diagnoses of schizophrenia undifferentiated. And also, in response to the Commissioner's argument, there's at least six times where the ALJ failed to mention the blunted effect and the problems with sleep, and she mentioned trazodone. Trazodone was prescribed for sleep problems, so I think that was an ongoing difficulty that Mr. Muser had. And I think certainly his schizophrenia should have been found as severe impairment. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.